FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 18, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICTORIA H.[1], <br><br>      Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>      Defendant. | NO: 2:21-CV-00187-LRS <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by Attorney Victoria B. Chhagan. Defendant is represented by Special Assistant United States Attorney Edmund Darcher. The Court has reviewed the administrative record, the parties' completed

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 1

briefing[2], and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 13, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

Plaintiff Victoria H. protectively filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 2, 2019, Tr. 77, 93, alleging an onset date of July 12, 2017, Tr. 235, 237, due to bulging discs in her back, left leg buckling due to pain in her back, an inability to stand or sit for long periods, bipolar disorder, depression, anxiety, diabetes, being constantly cold, and her fingers, toes, and lips turning blue, Tr. 273.  Plaintiff's applications were denied initially, Tr. 125-40, and upon reconsideration, Tr. 143-56.  A hearing before Administrative Law Judge Mark Kim ("ALJ") was conducted on September 2, 2020.  Tr. 38-66.  Plaintiff was represented by a non-attorney representative and testified at the hearing with the assistance of an interpreter.  *Id*.  The ALJ also took the testimony of vocational expert Erin Martz.  *Id*.  The ALJ entered an unfavorable decision on October 8, 2020.  Tr. 15-27.  The Appeals Council denied review on April 7, 2021.  Tr. 1-5.  Therefore, the ALJ's October 8, 2020 decision

---

[2]The Court notes that Plaintiff's Reply was filed after the February 14, 2022 deadline.  ECF Nos. 10, 14.  After a cursory review of the document, the Court has determined that its consideration does not affect the ultimate ruling of the Court.

ORDER ~ 2

became the final decision of the Commissioner.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 29 years old at the alleged onset date.  Tr. 235.  Plaintiff graduated from high school in 2007.  Tr. 274.  At application, Plaintiff reported that her work history included the jobs of laborer, mechanic operator, nanny, cook/waitress, and tray sorter.  Tr. 256, 274.  She reported that she stopped working on July 12, 2017, due to her impairments.  Tr. 273.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a

ORDER ~ 3

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

ORDER ~ 4

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER ~ 5

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

ORDER ~ 6

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 12, 2017. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; lumbar degenerative disc disease; major depressive disorder; and post-traumatic stress disorder (PTSD). Tr. 18. At step three, the ALJ found that Plaintiff's impairments or combinations of impairments do not meet or equal the severity of one of the listed impairments. Tr. 18.

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following

ORDER ~ 7

nonexertional limitations:

> never climb ladders, ropes, or scaffolds; occasionally climb flights of stairs, stoop, kneel, crouch, and crawl; should avoid extreme cold temperatures and unprotected heights; the work is limited to simple, routine, unskilled tasks with only occasional and simple changes; and work involving only occasional and superficial interaction with the public and co-workers.

Tr. 20. At step four, the ALJ identified Plaintiff's past relevant work as an agricultural produce sorter and production helper and found that Plaintiff is not capable of performing this past relevant work. Tr. 25. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including positions as a marker, routing clerk, and housekeeping, cleaner Tr. 26. On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged date of onset, July 12, 2017, through the date of the decision. Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB under Title II and SSI under Title XVI. ECF No. 12. Plaintiff argues that the ALJ failed to properly address the medical opinions in the file.

## DISCUSSION

Plaintiff challenges the ALJ's treatment of the opinions of Kara Stoll, D.O., A. Peter Weir, M.D., Dominika M. Breedlove, Psy.D., and Patrick Metoyer, Ph.D.

ORDER ~ 8

ECF No. 12

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). *Id.* The regulations emphasize that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and

ORDER ~ 9

consistent with the record. *Id.*

Supportability and consistency are further defined in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c), 416.920c(c).³

**A.    Kara Stoll, D.O.**

On February 13, 2020, Dr. Stoll completed a Medical Report Form. Tr. 754-55. She diagnosed Plaintiff with left lumbar radiculitis, SI joint dysfunction

---

³The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. ECF Nos. 12 at 4-5, 13 at 3-7. This Court has previously concluded that the regulations displace Ninth Circuit precedence. *Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021*), reversed on other grounds*, No. 21-35360 (9th Cir. Dec. 10, 2021).

ORDER ~ 10

1  bilaterally, and bilateral sacroiliitis. Tr. 754. She opined that Plaintiff would need
2  to lay down for one to two hours mid-day "secondary to excruciating pain from
3  activity." Tr. 754. She stated that if Plaintiff attempted to work a 40-hour a week
4  schedule, she would likely miss 4 or more days per month. Tr. 755.

5        The ALJ found the opinion to be not persuasive because it was "not
6  supported by the author[']s treatment note and is inconsistent with the overall
7  evidence." Tr. 25. This addresses the factor of supportability and is supported by
8  substantial evidence. In support of her opinion, Dr. Stoll referenced MRI results,
9  Tr. 754, which were included with the form, Tr. 756. This MRI showed only mild
10 narrowing at L4-5 and L5-S1. Tr. 754. The ALJ noted that "no lumbar nerve root
11 or spinal cord compromise was shown on any imaging." Tr. 25. Plaintiff argues
12 that the MRI in combination with examinations is not inconsistent with the opinion
13 because "radiculopathy is not caused by compression of the spinal cord
14 compression. It is caused by nerve root compression, which is not directly
15 visualized on an MRI or CT scan." ECF No. 12 at 8. However, the MRI
16 specifically stated that "[t]he conus medullaris terminates normally. The cauda
17 equina is normal." Tr. 756. The conus medullaris is "the tapering lower extremity
18 of the spinal cord." STEDMAN'S MEDICAL DICTIONARY 201720 (2014 ed.). The
19 cauda equina "comprises the roots of all the spinal nerves below the first lumbar."
20 STEDMAN'S MEDICAL DICTIONARY 151640 (2014 ed.). Therefore, this MRI did
21 examine the nerve roots and showed they were normal. Plaintiff's argument is not

ORDER ~ 11

supported by substantial evidence.

Next, the ALJ discussed the objective medical evidence in the record that was inconsistent with the opinion. Tr. 25. Plaintiff's straight leg tests were negative. Tr. 333. Her strength and sensation was normal upon exam. Tr. 333, 386, 398. Additionally, her gait was consistently normal. Tr. 349, 360, 741. Therefore, disabling back pain is not supported by substantial evidence. As such, the ALJ's discussion of consistency is supported by substantial evidence. Here, the ALJ has properly addressed the factors of supportability and consistency, and the Court will not disturb his treatment of the opinion.

**B.    A. Peter Weir, M.D.**

On August 16, 2018, Dr. Weir completed a consultative evaluation and diagnosed Plaintiff with chronic lumbosacral strain and diabetes. Tr. 330-34. He opined that Plaintiff's subjective complaints of pain were out of proportion to objective findings on examination. Tr. 333. He limited Plaintiff to standing and/or walking for about four hours in an eight-hour day and sitting for about six hours in an eight-hour day. Tr. 333. He stated she was capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. Tr. 333. He found that Plaintiff could only occasionally bend, stoop, or crouch. Tr. 334.

The ALJ found the opinion to be mostly persuasive, but found that "[w]hile the evidence is generally consistent with the opined limitations, the imaging and exam findings do not support the reduction to standing and walking for four

ORDER ~ 12

hours." Tr. 24. The ALJ's discussion of Dr. Weir's exam speaks to the opinion's supportability. This exam showed negative straight leg raise test bilaterally, normal musculoskeletal strength, and that Plaintiff ambulated normally. Tr. 333. This is inconsistent with limiting her to four hours of walking and standing. Therefore, the ALJ's discussion of supportability is supported by substantial evidence.

The ALJ's discussion of the other evidence in the record speaks to the opinion's consistency. This other evidence included normal strength and gait, Tr. 386, 398, which is inconsistent with limitations in walking and standing. Therefore, the ALJ's discussion of consistency is supported by substantial evidence. Because the ALJ has properly addressed the factors of supportability and consistency, this Court will not disturb the ALJ's treatment of the opinion.

**C.    Dominika M. Breedlove, Psy.D.**

On August 25, 2018, Dr. Breedlove completed a psychological consultative examination. Tr. 335-41. She diagnosed Plaintiff with major depressive disorder, PTSD, and psychological factors affecting other medical conditions. Tr. 339. Dr. Breedlove provided the following medical source statement:

> Her prognosis is guarded; it is expected to improve to fair with consistent mental health treatment. She might improve even with brief treatment. In her current state, she is thought to have at least moderate to marked difficulty focusing, concentrating, and persisting in tasks; interacting and communicating with others; and completing a normal workday without significant interruptions from psychologically-based symptoms. She is thought to have little to no difficulty understanding and remembering simple tasks, learning new simple tasks, and asking simple questions and requesting assistance; however, initiating certain

ORDER ~ 13

      physically-ba[s]ed tasks and persisting in tasks in general is again the biggest challenge currently.

Tr. 340.

The ALJ found the opinion to be not persuasive because it was "not supported by the examination or the overall evidence." Tr. 24. The ALJ noted that that "the limitations to the marked level appear to be based primarily off subjective complaints," and the opinion was not consistent with the medical examination. Tr. 24. This speaks to the supportability of the opinion and is supported by substantial evidence. The mental status exam showed her initial attitude to be guarded and "mildly irritated," but this "improved considerably after she felt more comfortable with the examiner." Tr. 338. Her eye contact was mostly normal. Tr. 338. Otherwise, her consciousness, orientation, speech, perception, attention, concentration, and memory were all normal. Tr. 338-39. This is inconsistent with the opinion that Plaintiff had "at least moderate to marked difficulty" with focusing, concentrating, persisting in tasks, and interacting and communicating with others. Therefore, this is supported by substantial evidence.

Additionally, the ALJ found that the opinion was not consistent with the overall evidence. Tr. 24. This speaks to the consistency of the opinion and is supported by substantial evidence. In another evaluation, Plaintiff appeared to have normal concentration, follow three-step commands, and had no difficulty following the conversation. Tr. 732. Therefore, the opined "at least moderate to

ORDER ~ 14

marked difficulties" in focusing, concentration, persistence, social interactions, and communicating are not supported by substantial evidence.  Here, the ALJ has properly discussed the factors of supportability and consistency, and the Court will not disturb the ALJ's treatment of the opinion.

**D.     Patrick Metoyer, Ph.D.**

On September 8, 2019, Dr. Metoyer completed a mental evaluation of Plaintiff.  Tr. 729-34.  He diagnosed her with panic disorder, PTSD, major depressive disorder, and bipolar I disorder.  Tr. 733.  Dr. Metoyer provided the following functional assessment:

> The claimant appears to have the ability to reason and understand.  She does have some adaptation skills.  Remote memory is mildly impaired.  Recent and immediate memory are intact.  Sustained concentration and persistence are adequate based on brief concentration tasks of this evaluation.  The claimant does describe difficulty following through with tasks in her home environment.  She describes significant interpersonal challenges in her personal life and prior work environment as a result of anxiety, PTSD, mood symptoms, psychotic symptoms.  Her ability to interact with co-workers and public is likely moderately impaired.  Due to anxiety, PTSD, mood symptoms and tendency to isolate herself from others.  Her ability to maintain regular attendance in the workplace is moderately impaired.  Her ability to complete a normal work day or work week without interruption from anxiety, PTSD and mood symptoms is likely moderately impaired.  Her ability to deal[] with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex tasks, task pressure, interacting with other individuals[.]  She appears to have some potential physical limitations that would best be assessed by a medical provider.

Tr. 734.

The ALJ found the opinion to be generally persuasive, but did not adopt the

ORDER ~ 15

marked limitation in adapting to usual stress because it was inconsistent with the evaluation notes and other evidence in the record.  Tr. 24-25.  The ALJ's citation to the inconsistencies with the examination notes speaks to the opinion's supportability and its inconsistencies with the general record speaks to the opinion's consistency.  The mental status exam was relatively normal with intact concentration, memory, and abstract thinking.  Tr. 732.  Furthermore, the mental status exam performed by Dr. Breedlove also showed these normal results.  Tr. 338-39.  The ALJ referenced these normal results in his determination.  Tr. 24-25.  Therefore, the ALJ's rationale is supported by substantial evidence, and the Court will not disturb the ALJ's treatment of the opinion.

Furthermore, Dr. Metoyer's marked restriction in dealing with stress was qualified: "Her ability to deal[] with the usual stress encountered in the workplace is markedly impaired *if it involves persistent activity, complex tasks, task pressure, interacting with other individuals*."  Tr. 734 (*emphasis added*).  The ALJ's RFC determination included a limitation to "simple, routine, unskilled tasks with only occasional and simple changes; and work involving only occasional and superficial interaction with the public and co-workers."  Tr. 20.  Therefore, the ALJ included a portion of the opinion in his determination, just not at the marked level.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must

ORDER ~ 16

defer to an ALJ's assessment so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

**DATED** April 18, 2022.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER ~ 17